# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| KEVIN KLARELL WASHINGTON, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No.   CV408-181 |
| | ) |                    CR406-205 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REORT AND RECOMMENDATION

Kevin Klarell Washington moves this Court for 28 U.S.C. § 2255 relief. Doc. 93.[1] The government opposes. Docs. 99 & 108. For the following reasons, Washington's motion should be denied.

## I. BACKGROUND

The following facts are drawn from *United States v. Washington*, 248 F. App'x 86 (11th Cir. 2007). A confidential informant repeatedly purchased crack cocaine from Washington in Savannah, Georgia between late 2004 and early 2005. That fetched a visit by Drug Enforcement Administration ("DEA") agents to his home, where they seized two vehicles that had been used to facilitate drug sales. The next day, Washington and his wife met with DEA agents and learned that evidence

---

[1] All "doc." references are to the CR406-205 file.

would soon be presented to the grand jury regarding his involvement in selling crack cocaine. The agents offered him the opportunity to assist in the DEA's investigation of other suspects. Washington asked for time to consider the offer.

He never accepted the offer. Instead, his wife's brother initiated an emergency distress call to the Coast Guard and falsely reported that Washington had fallen overboard from a fishing vessel into the Wilmington River. The Coast Guard spent $314,019 unsuccessfully searching for him. His wife contacted the DEA and asked it to pay $33,000 for a diver to continue to search for Washington's body. The DEA refused, and friends later held a memorial service for him.

Convinced that Washington was still alive, government agents investigated further and ultimately learned that Washington had staged his death, assumed a false identity using forged documents, and hid. Following his capture and his wife's admission that she had lied to a grand jury about his death, they both pled guilty. He pled to one count of distributing crack cocaine, in violation of 21 U.S.C. § 841(a)(1), and one count of sending a false distress message to the Coast Guard, in violation

of 14 U.S.C. § 88(c). After his unsuccessful appeal, he filed the instant § 2255 motion. Doc. 93.

## II. ANALYSIS

Washington raises three arguments: (1) his "Due Process Rights were violated because the "Government engaged in Breach of Plea Agreement"; (2) "The District Court erred by not enforcing the Plea Agreement and the subsequent written Promise and Obligation by the Government"; and (3) "Counsel was Ineffective for failing to challenge Breach of Plea Agreement violation on Direct Appeal Stage." Doc. 93 at 11-24.

Claims (1) and (2) are rejected as baseless. The government kept its promise. In its written plea agreement with Washington it "[a]gree[d that] there are no aggravating circumstances which would warrant an increase in the offense level under chapter 3, Part A (victim-related adjustment), Part B (role in the offense adjustments), or Part C (obstruction) of the [U.S.] sentencing guidelines." Doc. 61 at 2, 5. Washington cites *nothing* to show that the prosecutor violated that agreement (i.e., the prosecutor never insisted that there were aggravating circumstances).

Washington's real problem is with the Court's probation department, which *did* recommend an increase based on, *inter alia*, Washington's faked-death, obstruction of justice efforts.[2] Washington's

---

[2] The Eleventh Circuit comprehensively detailed the PSI's findings and recommendations:

> In the PSI, the probation officer calculated [movant's] offense level for the cocaine-distribution offense as 34, including a *two-level enhancement for obstruction of justice*, pursuant to U.S.S.G. § 3C1.1. Finding U.S.S.G. § 2B1.1 (which pertains to economic offenses) to be the most appropriate Guideline for Kevin's false-distress-signal offense, the probation officer assessed Kevin's offense level as 18, including a 12-level enhancement for the $314,019 amount of loss incurred by the Coast Guard. Pursuant to U.S.S.G. § 3D1.2, Kevin's offenses were grouped together, resulting in an adjusted offense level for the group of 34 (as the highest adjusted offense level of the offenses in the group). The probation officer then assessed a three-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), resulting in a total offense level of 31.
>
> Regarding Kevin's criminal history, the probation officer stated that Kevin was sentenced to six years' probation on July 26, 1995 in state court after he pleaded guilty to cocaine possession. That probation was revoked upon Kevin's arrest for marijuana possession in February 1996, and he was imprisoned for 60 days. In November 1999, Kevin was arrested for selling cocaine, and on April 7, 2000, he pleaded guilty to the sale of a controlled substance and possession of a controlled substance with intent to distribute. On that same day, Kevin's probation for his 1995 cocaine-possession conviction was revoked for the balance of the term, which the probation officer calculated as "one year, three months, and 19 days." In an addendum to the PSI, the probation officer acknowledged that there were no state court records documenting precisely what constituted "the balance" of Kevin's probation at the time of the April 2000 revocation. Given the unavailability of the record, the probation officer "simply subtracted the amount of time [Kevin] had served on probation from the amount of time originally imposed." Because the calculated term of imprisonment exceeded one year and one month, the probation officer assigned three criminal history points, pursuant to U.S.S.G. § 4A1.1(a).
>
> The probation officer also assessed one criminal history point each for Kevin's 1997 conviction for driving with a suspended license and his 1998 conviction for obstruction of a law enforcement officer by providing false information.

4

entire "government-breach" argument is thus premised on his lumping the probation office (hence, the judicial branch of the federal government) in with the executive branch -- to then bogusly contend that "the government" breached its promise to him. Doc. 93 at 11-17. He has done this despite the fact that the district judge pointed out to Washington at his change-of-plea hearing that the probation officer was a Court employee and thus "[t]he Court and the prosecutor are two different agencies. Do you understand that? [A.] Yes, sir." Doc. 98 at 46-47; *see also* doc. 79 at 5-6 (sentencing hearing during which probation officer reminded the Court, and thus Washington, that "the plea agreement also said that there would be occasions with the probation officer's guidelines calculations or the Court's determination of the guidelines would be different than what the government estimated."); doc. 98 at 35-36 (change of plea hearing -- Washington said he understood that "the plea agreement is not binding upon the Court. . . . "). Washington is free to pretend that the Executive Branch, charged

---

Kevin was thus assigned a total of 11 criminal history points, resulting in a criminal history category of V. With a total offense level of 31 and a criminal history category of V, Kevin's Sentencing Guidelines imprisonment range was 168 to 210 months.

*Washington*, 248 F. App'x at 88-89 (footnote omitted). The district court summarily overruled all of Kevin's PSI objections, found the guidelines range to be 168-210 months, then sentenced him to 188 months. *Id.* at 189-90.

5

with prosecuting the Washingtons of the world and thus (in criminal cases) act as "the government" since the nation's founding, is *not* the sole party to his plea agreement (and thus, somehow this Court is involved). Pretending things, however, does not support § 2255 relief.

Accordingly, this Court did not err by failing to enforce "the government's" promise. As the government points out, nothing in the agreement obligated it to lobby *against* an enhancement, doc. 99 at 6, it only needed to avoid *recommending* one. And that is precisely what it did. Thus, the government honored its plea bargain with Washington. *Id.* at 7. Movant is simply unhappy with the sentence he received.

Washington also contends that he was denied the effective assistance of counsel based upon the "government's" failure to abide by the plea agreement. "Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.' *McMann v. Richardson*, 397 U. S. 759, 771 (1970). . . ." *Padilla v. Kentucky*, ___ U.S. ___, 2010 WL 1222274 at * 6 (Mar. 31, 2010).[3] In

---

[3] To prevail on a claim of ineffective assistance of counsel (IAC), a defendant must establish two elements: (1) that counsel's performance fell below the wide range of reasonably competent performance under prevailing professional standards and (2) that but for counsel's deficient performance, the outcome of the proceedings probably would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-89 1984). In evaluating counsel's performance, "every effort [must] be made to eliminate the

6

that Washington shows no error on claims (1) - (2), it follows that he cannot show that his defense lawyer erred on appeal by failing to argue that the government breached the plea agreement. Thus, claim (3) -- his ineffective assistance claim (doc. 93 at 17-21) -- also fails.

The Court should therefore **DENY** Kevin Klarell Washington's 28 U.S.C. § 2255 motion, doc. 93, as well as his motion for reconsideration, doc. 107 (where he presents and rehashes the same claims as an Fed. R. Civ. P. 60(b) motion), and for a hearing (he wants to orally argue same). Doc. 109. Moreover, applying the Certificate of Appealability ("COA") standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2

---

distorting effects of hindsight ... [and] a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. This standard applies to challenges to guilty pleas. *Stano v. Dugger*, 921 F.2d 1125, 1149-51 (11th Cir.1991). A guilty plea must be entered into with the advice of competent counsel regarding alternative courses of action open to the defendant. *Id*. Counsel's failure to provide the defendant with reasonably competent advice can leave a guilty plea open to attack as involuntary. *Id*. But

> [s]urmounting *Strickland's* high bar is never an easy task. *See, e.g.*, 466 U. S., at 689 ("Judicial scrutiny of counsel's performance must be highly deferential"); *id.*, at 693 (observing that "[a]ttorney errors ... are as likely to be utterly harmless in a particular case as they are to be prejudicial"). Moreover, to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances. *See Roe v. Flores-Ortega*, 528 U. S. 470, 480, 486 (2000).

*Padilla*, 2010 WL 1222274 at *10. Washington does not claim he would have elected to go to trial but for allegedly deficient advice; rather, he seeks specific enforcement of the plea bargain that he in effect has now re-written to include *the Court* (its probation department) as a party. Doc. 93 at 11 ("Petitioner seeks specific performance of his plea agreement. . . .").

(S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED,** this 5th day of April, 2010.

/s/ *signature*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA